**Electronically Filed
Intermediate Court of Appeals
30407
10-DEC-2013
08:01 AM**

NO. 30407

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JANICE LYNN SUSSMAN, Plaintiff-Appellee, v.
ROGER LEE SUSSMAN, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-DIVORCE NO. 04-1-0468)


SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, Foley and Leonard, JJ.)

Defendant/Appellant Roger Lee Sussman (**Roger**) appeals from a Family Court of the Second Circuit (**Family Court**) March 3, 2010 Order After Hearing, granting in part and denying in part Roger's motion for post-decree relief from a divorce decree that dissolved his marriage from Plaintiff/Appellee Janice Lynn Sussman (**Janice**).[1]

Roger raises several points of error on appeal, arguing that the Family Court erred by:

(1) failing to recalculate the Divorce Judgment's child and spousal support awards based upon a material change of circumstances (in contravention of the ICA's decision in Sussman I) and instead erroneously affirming the awards as a result of:

(a) improperly imputing pre-decree monetary gifts given from Roger's parents "directly" to Janice;

(b) failing to recalculate Roger's income, where Roger's parents "ceased giving their regular and consistent monetary gifts;"

---

[1]     The Honorable Keith E. Tanaka presided.

(c) failing to recalculate the income imputed to Janice based on the "regular and consistent monetary gifts" she was receiving from her parents; and

(d) denying Roger's HFCR Rule 60(b) motion to recalculate the Divorce Judgment's spousal and child support awards;

(2) issuing mixed Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**) not based on substantial evidence in its March 3, 2010 Order After Hearing;

(3) disregarding evidence related to Janice's ability to exert reasonable efforts to attain self-sufficiency;

(4) admitting documents into evidence that were not named on Janice's Exhibit List and not properly authenticated; and

(5) using financial information not timely submitted in recalculating the child support order.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Roger's points of error as follows:

(1) Roger contends that the Family Court failed, in contravention of the holding in Sussman I, to "properly impute regular and consistent monetary gifts to the beneficiary of said gifts," essentially arguing that the Family Court's calculations of child and spousal support were incorrect based on contemporary circumstances. In Sussman I, the Intermediate Court of Appeals (**ICA**) opined:

> In light of HRS § 580-47, we conclude that the family court may and should consider regular and consistent monetary gifts received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support. Pursuant to HRS § 580-47(d), if and when Roger's parents materially reduce their regular and consistent monetary gifts to Roger, he may allege a material change in circumstance and ask the family court for a review of its orders.

Sussman I, 112 Hawai'i 437, 441, 146 P.3d 597, 601 (App. 2006). There are four parts to this argument.

First, Roger contends that the Family Court ignored evidence suggesting that, after his separation from Janice in November 2003, the monetary gifts from his parents were intended solely for the benefit and/or enjoyment of Janice and the parties' minor children and, therefore, should have been imputed to her income. Roger contends that the ICA, in issuing the Sussman I decision, was not aware that Roger's parents were giving monetary gifts directly to Janice; however, on remand, the Family Court was made aware of this fact during the February 8, 2010 trial and therefore erred in allowing the Divorce Judgment's spousal support award to stand.

"[A] spousal support modification hearing is not a review hearing or a rehearing of the original hearing. It is a new hearing based on changed circumstances." Saromines v. Saromines, 3 Haw. App. 20, 28, 641 P.2d 1342, 1348 (1982) (citation omitted). Though at one point Janice was receiving some funds from Roger's parents, it is uncontested that at the time of the February 8, 2010 trial, Janice was receiving no monetary gifts from them. Janice testified that "Roger's parents stopped giving the monthly allowance back in 2004." Roger testified that his parents were giving funds directly to Janice "[f]or most of the time, between the time of separation [in November 2003] until almost the time of their departure [in 2005]." Thus, the parties agree that it has been a significant amount of time (at least five years) since Janice received any sort of monetary gift from Roger's parents.

In order to consider monetary gifts received by a spouse as part of that spouse's actual financial resources, condition, and ability when determining spousal support, the gifts must be "regular and consistent"; irregular, unpredictable, or past gifts may not be imputed as income. See Sussman I, 112 Hawai'i at 441, 146 P3d at 601. Although the gifts from Roger's parents could possibly be considered "regular and consistent" in the sense that they were mostly given to Janice on a fairly consistent basis over a year and a half period, it was not error to classify them otherwise given that they had been discontinued

3

several years before the Family Court's ruling. Moreover, they were not always given directly to Janice; Roger admitted that sometimes the funds were given to him to make purchases for the children's sake. Accordingly, the Family Court did not abuse its discretion in refusing to recalculate the spousal support award to impute the pre-divorce monetary gifts given from Roger's parents to Janice.

Second, Roger asserts that the Family Court failed to recalculate child and spousal support, pursuant to a material change of circumstances, because his parents materially reduced their regular and consistent monetary gifts. However, the Family Court did, in fact, reduce the child support award based upon a material change in Roger's financial circumstances (namely, that there had been a change in the "current financials" of the parties, as well as the fact that Roger was only responsible for one child, instead of three). Therefore, the issue is whether the court's failure to similarly change the Divorce Judgment's spousal support award was an abuse of discretion.

A family court, upon a "material change in the physical or financial circumstances of either party, or upon a showing of other good cause," may "amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be ordered." HRS § 580-47(d). In Vorfeld v. Vorfeld, this court held that trial courts are presented with three questions when reviewing a request to modify court-ordered spousal support: (1) whether any of the relevant circumstances materially changed; (2) if so, whether there should be a modification; and (3) if a modification is warranted, what that modification should be. Vorfeld v. Vorfeld, 8 Haw. App. 391, 391-92, 804 P.2d 891, 892 (1991). The court in Vorfeld described "relevant circumstances" as follows:

> The first relevant circumstance is the payee's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is

4

> the payor's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

Id. This court must also consider that family courts are afforded wide discretion with respect to a modification based on a material change in circumstance. See Davis v. Davis, 3 Haw. App. 501, 506, 653 P.2d 1167, 1171 (1982); see also In re Doe, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994) (stating that "[t]he family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion").

In the present case, the Family Court decided not to disturb the spousal support award, instead opting to leave it at its current level. In rendering its decision, the Family Court noted the affirmation of spousal support by the ICA in Sussman I, and considered that there was no significant change in Roger's situation, because "even though [Roger's] parents [] stopped payment directly to Ms. Sussman, what they did was open up this -- open this trust, this irrevokable [sic] trust for Mr. Sussman, which then covered his expenses." The court found that the trust essentially took the place of the periodic payments that Roger's parents had previously given to him (and to Janice). The Family Court's ruling is consistent with Vorfeld, in that the court considered all of the relevant circumstances (primarily "the payor's ability to pay spousal support"), and determined that they did not warrant modification of the award. Thus, we conclude that the Family Court did not abuse its discretion in finding that the spousal support award should remain the same, even though Roger's parents materially reduced their direct monetary gifts to him.

Third, Roger contends that the Family Court abused its discretion when it failed to impute the so-called "regular and consistent monetary gifts" that Janice received from her parents. In its Order After Hearing, the Family Court found the following:

5

> [T]here is no imputation of income to [Janice] based upon [Janice] (and the minor child) living in [Janice's] parents' home. The Court found that Ms. Sussman's parents' contributions to [Janice] are not considered regular and consistent monetary gifts; rather, what Ms. Sussman's parents are doing is just providing for her as a matter of necessity - it is not because they have money to spare, but because there is no choice here.

Roger, on the other hand, argues that the help Janice received from her parents (in the form of free or reduced rent, shared use of the family vehicle, and some meals) should be considered "regular and consistent monetary gifts." The Family Court's finding, however, that this assistance is a "matter of necessity," and not a "financial gift," is supported by the record. Here, Janice's housing situation is very different from that during the parties' marriage. During the marriage, Roger's parents purchased a separate house for the parties to live in, and they also paid for essentially all of the parties' expenses, despite living in a completely different location. Following the divorce, Janice and the parties' two youngest children were simply living with Janice's parents in her parents' home, accepting meals provided by her parents, and some "emergency aid" with the children's expenses. Furthermore, Janice testified that the arrangement with her parents was based on an agreement that reimbursement would be made in consideration of her parents' financial help:

> As far as, you know, basically, to the issue at hand is just that -- that it's been hard. I mean, I've been receiving food stamps for ever since I have been in the State of Washington.
>
> . . .
>
> So, it's been the food stamps. And at the beginning there we were also getting family aid because of the time that I was with cancer. And so we got some emergency family aid. And that's been -- my parents have helped with paying for their grandkids in school, and the agreement was that it was a long-term loan.
> Just as I had always intended that staying in their home, being that their income is very low, that their home was -- that I would be paying them back for some of the expenses that they have had to put out as far [as] rent and just living expenses.

We conclude that the Family Court did not err in declining to characterize the assistance of Janice's parents as financial gifts and/or imputed income.

Fourth, Roger argues that the Family Court erred when it denied his oral Hawai'i Family Court Rules (**HFCR**) Rule 60(b)(6) Motion to "go back to the Divorce Decree, calculate the parties' accurate income, and retroactively order the correct child support and spousal support awards." The Family Court found that "under Rule 60(b) there's no grounds as far as mistake, inadvertance [sic], excusable neglect, or newly discovered evidence or fraud to retroactively go back and undue what's already been done here." The Family Court further found that the motion was not made within a "reasonable time," stating that "since the divorce was back in April of '05 and since the ICA opinion came back in August of '06, it's already -- this is February 2010 . . . . I don't find that there's been any reasonable time as far as the request to make this retroactive."

HFCR Rule 60(b)(6) "permits the trial court in its sound discretion to relieve a party from a final judgment." Hayashi v. Hayashi, 4 Haw. App. 286, 290, 666 P.2d 171, 174 (1983). Specifically, the rule provides, in relevant part:

> Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken.

Relief under HFCR Rule 60(b)(6) is extraordinary, and the movant must show that "(1) the motion is based on some reason other than those specifically stated in clauses 60(b)(1) through (5); (2) the reason urged is such as to justify the relief; and (3) the motion is made within a reasonable time." Hayashi, 4 Haw. App. at 290, 666 P.2d at 174 (citation omitted). "The

appeal of a denial of an HFCR Rule 60(b) motion brings up for review only whether the trial court abused its discretion in denying the motion itself; it does not bring up for review the merits of the underlying order or judgment." <u>Rigsby v. Rigsby</u>, No. 30359, at *2 (App. Feb. 28, 2013) (SDO) (citation omitted).

In the present case, Roger argues that the Family Court's decisions were "based on incorrect facts," which stems from the contention that the court improperly imputed the parties' income. However, as stated above, the Family Court did not abuse its discretion regarding the imputation of income. Roger otherwise fails to provide a "reason justifying relief" as to why the spousal support award should now be retroactively amended.

Additionally, HFCR Rule 60(b) requires that a motion be made "within a reasonable time." HFCR Rule 60(b). The record indicates that although Roger was represented by counsel at all times during the divorce proceedings, there was a delay of nearly three years after the <u>Sussman I</u> decision was filed before Roger filed his May 28, 2009 motion requesting a modification of the child and spousal support awards. Indeed, Roger's oral motion seeking retroactive, as well as prospective, relief was not made until nearly four years after the <u>Sussman I</u> decision was filed. It was not an abuse of discretion to reject Roger's argument that his motion was made within a reasonable period of time. The Family Court did not abuse its discretion in denying Roger's Rule 60(b)(6) motion.

(2) Roger contends that the Family Court's FOFs in its March 3, 2010 Order After Hearing were insufficient and do not satisfy the requirements of HFCR Rule 52(a).[2] FOFs (and COLs

---

[2] HFCR Rule 52(a) provides:

(a) **Effect.** In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and
(continued...)

8

that present mixed questions of fact and law) are reviewed under the clearly erroneous standard. <u>Schiller v. Schiller</u>, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009) (citations, internal quotation marks, and brackets omitted). An FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. <u>Id.</u> "Where an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by the evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law." <u>Doe IV v. Roe IV</u>, 5 Haw. App. 558, 565, 705 P.2d 535, 542 (1985) (citation omitted). Roger claims the Family Court's FOFs do not support its:

(1)    failure to properly impute gifts pursuant to the <u>Sussman I</u> decision in the recalculation of spousal support;

(2)    refusal to recalculate the spousal support award based on a material change in circumstances;

(3)    refusal to impute the "gifts" from Janice's parents to Janice;

(4)    conclusion that the support given to Janice from her parents were a matter of "necessity," rather than a "gift";

(5)    recalculation of child support based on "unverified figures";

(6)    failure to properly impute gifts pursuant to the <u>Sussman I</u> decision in the recalculation of child support;

(7)    conclusion that "there are no grounds to retroactively go back and undo what has already been ordered"; and

(8)    conclusion that Roger's Rule 60(b) motion had not been made in a reasonable time.

---

[2](...continued)
conclusions of law. . . . Findings of fact if entered shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . . If a decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

Accordingly, where "the written decision of the court contains findings of fact and conclusions of law," the court need not enter separate FOFs and COLs. <u>See</u> HFCR Rule 52(a).

Although not extensive, the Family Court's FOFs were sufficient to enable the parties and this Court to ascertain the basis of its decision because the court laid out its findings and conclusions in a logical manner that was supported by the record. "The trial judge is required to only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." Doe IV, 5 Haw. App. at 565, 705 P.2d at 542 (citations and internal quotation marks omitted). Upon review, we conclude that Roger's argument is without merit.

(3) Roger argues that the Family Court erred and abused its discretion by disregarding facts related to Janice's failure to exert reasonable efforts to attain self-sufficiency. A party receiving spousal support is "always under a duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage and will not be allowed to benefit from the consequences of a violation of that duty." Saromines, 3 Haw. App. at 28, 641 P.2d at 1348.

Roger argues that despite Janice's work history and job skills, she continues to depend on others for support. At trial, Roger testified that Janice had previously worked as a waitress, a cook, and a lab technician, and had also worked in a plant nursery, in production, and in the office of a medical practice. Roger further testified that during the marriage, Janice was employed at a local cable access station and directed "a number of non-profit voluntary non-paying jobs." Based on her work experience, Roger contends, Janice is capable of earning a living for herself.

Janice, on the other hand, testified that she had been receiving welfare benefits since the divorce in 2005, and due to two years of cancer treatments, she had not been able to start working until 2007. Janice also testified that in 2007, she began working part-time as a Director at a Pregnancy Resource Center, while simultaneously enrolling herself in an online schooling program in order to work towards a degree in natural sciences and religious studies, and later a degree in marriage

and family counseling. Janice further testified that she was only working "half time" ("generally . . . more than twenty hours a week") because those were the only hours available to her and because of her school and family obligations. The record indicates that although Janice did not work regularly during the marriage, following the divorce (and when her health improved) Janice made efforts to support herself by furthering her education, as well as simultaneously working part-time. In light of Janice's work history, health issues, job skills, efforts, and the standard of living established during the marriage, the Family Court was within its discretion in finding that Janice did not violate her duty to attain self-sufficiency.

(4) Roger asserts that the Family Court erred by admitting the Trust document into evidence because it (1) was not named on Janice's Exhibit List and (2) was not properly authenticated. First, we note that the terms of the Trust were generally referenced in Roger's opening statement, as well as in Roger's trial testimony. Despite Roger's inability to identify the document admitted as being the Trust document, the Family Court admitted it into evidence as Plaintiff's Exhibit A, stating that Roger "had a chance to review it" and that it "is purported to be what it is." The Family Court subsequently questioned Roger about the Trust.

"Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result." Inoue v. Inoue, 118 Hawai'i 86, 93, 185 P.3d 834, 841 (App. 2008) (citation and internal quotation marks omitted). "There being no single right or wrong disposition of authentication issues," the Family Court's ruling on authentication of items under rules of evidence is subject, on appeal, to "review for abuse of discretion." Kam Fui Trust v. Brandhorst, 77 Hawai'i 320, 326, 884 P.2d 383, 389 (App. 1994).

Here, we note that the Trust document was clearly relevant to the issues before the Family Court. It provided evidence germane to the calculation of Roger's income and (along with Roger's testimony) explained the process by which the

trustee used Trust monies to pay for Roger's monthly expenses. Although Roger was purportedly unable to authenticate the Trust document, Janice had also received a copy of the Trust directly from the Trust Company pursuant to court order.  Moreover, based on his personal knowledge, Roger testified about the Trust and the process by which he obtains reimbursement from the Trust for his living expenses.  We conclude that the Family Court did not abuse its discretion in determining that the evidence was sufficient to support a finding that the Trust document was what it was purported to be.  In addition, based on Roger's testimony regarding the trust, any error that might have resulted from admitting the Trust document into evidence was harmless error and did not affect any of Roger's substantial rights.  See Hawaii Rules of Evidence (HRE) Rule 103(a)[3]; HFCR Rule 61.[4]  We conclude that the Family Court did not abuse its discretion in admitting the Trust document and that, even if the Family Court erred, such error was harmless.

(5)  Finally, Roger contends that the Family Court abused its discretion by not requiring Janice to file her financial statements prior to the hearing on his motion for post-decree relief.  HFCR Rule 7(b)(5) requires that both the movant and the respondent ("no later than 48 hours prior to the hearing") submit signed Income and Expense, and Asset and Debt Statements, in connection with "[a]ny motion seeking an order for or modification of financial or monetary relief of any kind,

---

[3]     HRE Rule 103(a) states, in relevant part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

[4]     HFCR Rule 61 provides the following:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

except for an award of attorney's fees in enforcement proceedings."

At the hearing, because Janice had not previously filed an Income and Expense Statement, on cross-examination, Roger's counsel questioned Janice about "what's on the [statement] sheet."  Janice essentially testified as to all the information covered on the Income and Expense Statement.  Roger did not object to Janice filling out a written statement after giving her testimony:

> THE COURT:  Mr. Edelman [counsel for Roger], since you went through the income and expense statement, which wasn't provided and Ms. Sussman didn't fill one out, do you want to fill it out on her behalf and have her --
>
> EDELMAN:  Well --
>
> THE COURT:  I know you went through all the questions, essentially, going through that form with her.
>
> EDELMAN:  Right.
>
> THE COURT:  Do you want that admitted as, like, an exhibit, as far as a filled-out form?
>
> EDELMAN:  Yes, I would, your Honor.
>
> THE COURT:  Well, let me do this then.  Let me have -- I will give Ms. Sussman a blank income and expense so you can exactly put down what was just asked you as far as your income and expenses.
>
> So, and then you can sign off on it as far as it being true and correct.
>
> [JANICE]:  Okay. . . . I don't know if I might need his notes to see what I said.
>
> . . .
>
> EDELMAN:  I have no problem.  I will share those notes, your Honor.

Janice's Income and Expense Statement was consistent with her testimony, although there were minor deviations.

Because Roger did not object to the admission of Janice's Income and Expense Statement, and in fact requested its admission, this point of error is waived on appeal.  See Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.") (citations

omitted). Moreover, we conclude that the Family Court did not abuse its discretion in considering Janice's Income and Expense Statement.

For these reasons, the Family Court's March 3, 2010 Order After Hearing is affirmed.

DATED: Honolulu, Hawai'i, December 10, 2013.

On the briefs:

Joel Edelman
for Defendant-Appellant

Janice Sussman
Pro Se Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge